IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RONALD LAY, JR.,

      Plaintiff,             No. CIV S-07-0711 JAM GGH P

   vs.

R. MARROW, et al.,[1]           ORDER &

      Defendants.      FINDINGS AND RECOMMENDATIONS

_____/

Introduction

      Plaintiff, a prisoner proceeding pro se and in forma pauperis, seeks relief pursuant to 42 U.S.C. § 1983.  Pending before the court are 1) motion to dismiss, filed on 2/14/08, by defendants Marrow, Dean, Tinseth, Roblez, Heintschel, Long, Neis (incorrectly named "Neil") and Williams, to which plaintiff filed an opposition on 3/03/08, after which defendants filed a reply on 3/07/08; 2) defendant Woodard's motion to join defendants' motion to dismiss, filed on 3/06/08, which request, although plaintiff filed his opposition on 3/14/08,[2] is hereby granted; 3)

---

[1] Although defendants do not specifically note it in their motion, defendant Marrow was apparently incorrectly sued as Morrow and defendant Heintschel as defendant Heintchel, and the court will direct the Clerk to correct the spelling in the court's docket.

[2] Plaintiff objects to defendant Woodard's motion to join the pending motion to dismiss on the ground that this defendant could have filed a timely response and that defendants wrongly

1

1  plaintiff's request for leave to file a second amended complaint and proposed second amended

2  complaint, filed on 4/23/08.

3  First Amended Complaint

4         The gravamen of plaintiff's allegations against defendants is that he was subjected

5  to an excessive use of force in violation of his rights under the Eighth Amendment during an

6  unnecessary cell extraction by defendants Morrow, Dean, Tinseth and Roblez, acting under the

7  supervision of defendants Long, Heintschel and Neis, on 10/25/05, resulting in serious physical

8  injuries to plaintiff.  Amended Complaint (AC), pp. 2, 4-19,[3] filed on 9/20/07.[4]  He also claims to

9  have been subjected to deliberate indifference to his serious medical needs and a conspiracy to

10 cover up constitutional violations in violation of the Eighth and Fourteenth Amendments.  AC, p.

11 2.

12         At about 10:00 a.m. on 10/25/05, defendant Long asked plaintiff to "cuff up" so

13 water in plaintiff's cell could be cleaned up.  When plaintiff objected, defendant Long warned

14 plaintiff if he refused he would be pepper-sprayed; plaintiff nevertheless continued to refuse and

15 defendant Long left.  About 15 minutes later, defendant Long returned with defendant

16 Heintschel, shaking cans of pepper spray; defendant Long opened the food port and sprayed a can

17 of pepper spray through the food port of plaintiff's cell and then closed the door.  Five minutes

18 later, more cans of pepper spray were "shot into his cell."  Breathing became unbearable, so

19

20 asserted at the time of the filing of the motion to dismiss that Woodard had not yet been served.
   A review of the waivers of service filed for defendants Marrow (incorrectly spelled Morrow),
21 Dean, Tinseth, Roblez, Heintschel (misspelled Heintchel), Long, and William, filed on 1/15/08,
   all indicate that those executed waivers were signed on 12/19/07.  In a separate filing on 1/24/08,
22 defendant Neis' waiver was signed on 1/15/08, and defendant Neis' waiver was signed on his
   behalf on 1/15/08 and defendant Woodard's was signed on 1/16/08.  While it is puzzling that
23 defendant Neis' name was included on the original motion and defendant Woodard's was not and
   that defendants' incorrectly therein stated that Woodard had not yet been served, this appears to
24 be simply a clerical error on defendants' part that Woodard's motion to join is intended to rectify.

25        [3] The undersigned references the pagination of the court's electronic docket.

26        [4] Plaintiff's original complaint was filed on 4/16/07.

2

1   plaintiff breathed through a hole in the back window of his cell.  With his back to the cell door,

2   plaintiff heard a booming sound followed by another and felt something hit the right side of his

3   head and lost consciousness.  AC, p. 5.

4          Plaintiff contends that when he regained consciousness he was being struck by

5   feet and fists although he offered no resistance.  He was handcuffed, shackled, dragged from his

6   cell by the leg shackles' chain, forced to stand and walk by defendants' Morrow and Dean even

7   though he complained of the tight shackles causing him great pain.  Plaintiff was not put on the

8   gurney for the decontamination shower until defendants Morrow and Dean, after Morrow had

9   looked back and yelled for plaintiff to "stop resisting," had forcefully slammed his face into the

10  6-blocks' door frame which "busted" his jaw open.  Although non-defendant M.T.A. Schiller

11  ordered that plaintiff be taken to the emergency room, defendants Morrow and Dean threw

12  plaintiff head first into the shower by the leg irons and handcuffs, where plaintiff remained from

13  11:00 a.m. until 4:15 p.m. with the shackles and cuffs so tight "he lost all feeling in his hands and

14  feet." AC, p. 6.

15         Defendant Pazos came to the decontamination shower and asked if plaintiff had

16  injuries at 11:45 a.m., but even though plaintiff showed Pazos his injuries, included the

17  laceration on his jaw, and described what had happened, defendant Pazos walked away doing

18  nothing.  AC, pp. 7, 15.  Plaintiff states that he did not see non-defendant R.N. D. Klith or

19  receive any medical treatment from her that day.  At 4:15 p.m. on 10/25/05, non-defendant C/O

20  Dunkle loosened plaintiff's leg irons and handcuffs and escorted plaintiff to the emergency room

21  where defendant Williams wiped some of the blood off the plaintiff's jaw laceration for

22  photographs by Dunkle, but she failed to treat, clean or close the laceration or check to determine

23  if the jaw had been fractured or if plaintiff had a concussion; nor did she call a doctor.  Plaintiff

24  was taken to the holding cell until 6:30 or 7:00 p.m., then returned to the cell that was still

25  contaminated with pepper spray.  AC, pp. 7, 17-18.

26  \\\\\

3

1            Plaintiff claims that defendant Heintschel had nodded to defendant Morrow

2    indicating that the video camera was turned off before defendant Morrow slammed his face into

3    the door frame.  AC, pp. 8, 14.  Plaintiff contends that defendants Roblez and Tinseth acted with

4    defendants Morrow and Dean in attacking him while he lay unresisting on the floor.  AC, pp. 8.

5    Defendants Dean and Tinseth kicked plaintiff multiple times while he lay helpless.  AC, pp. 8-9.

6    In addition, defendant Roblez had shot the 40 mm twice, one time causing a rubber block to

7    strike plaintiff in the side of the head rendering plaintiff unconscious.  AC, p. 10.  Defendant

8    Woodard failed to video record what occurred in the cell and turned the video camera off before

9    plaintiff was slammed into the door frame.  AC, pp. 12-13.  Defendant Heintschel provided false

10   information to defendant Nies for the use of force authorization; defendant Long authorized the

11   use of unnecessary force and defendants Long and Heintschel stood in the doorway to block the

12   video camera from recording the assault in plaintiff's cell.  AC, pp. 14-15.  Defendant Morrow

13   filed a false report on what occurred, subjecting plaintiff to disciplinary action and possibility of

14   felony charged for attempted battery on staff.  AC, p. 9.  Defendants Tinseth, Heintschel and

15   Pazos, also filed a false report; defendant Dean filed a false CDC Rule 115 rule violation report.

16   AC, pp. 10-11, 15-16.  Defendant Nies authorized the excessive use of force, failed to ensure

17   compliance with cell extraction procedures, and failed in his duty to protect plaintiff.  AC, pp.

18   18-19.  Defendants violated his Eighth and Fourteenth Amendment rights for which plaintiff

19   seeks money damages.  AC, pp. 2, 21.

20   Motion to Dismiss

21           Defendants move for dismissal under non-enumerated Fed. R. Civ. P. 12(b)

22   alleging a failure to exhaust administrative remedies properly.  Motion to Dismiss (MTD), pp. 1-

23   2.  Defendants move for dismissal of defendants Marrow, Dean, Tinseth, Roblez, Heintschel,

24   Long and Neis.  By defendant Woodard's subsequent joinder, dismissal of this defendant is also

25   sought.  As to defendant Pazos, the court has separately recommended dismissal of this

26   defendant.  Defendants seek to limit defendant's lawsuit against defendant Williams to a claim of

4

1    deliberate indifference to serious medical needs on 10/25/05.  Id.

2                    *Legal Standard under Non-Enumerated Fed.R.Civ.P. 12(b)*

3                    In a motion to dismiss for failure to exhaust administrative remedies under non-

4    enumerated Rule 12(b) of the Federal Rules of Civil Procedure, defendants "have the burden of

5    raising and proving the absence of exhaustion." Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir.

6    2003).  The parties may go outside the pleadings, submitting affidavits or declarations under

7    penalty of perjury, but plaintiff must be provided with notice of his opportunity to develop a

8    record. Wyatt v. Terhune, 315 F.3d at 1120 n.14.  The court provided plaintiff with such fair

9    notice by Order, filed on 11/09/07.

10                   Should defendants submit declarations and/or other documentation demonstrating

11   an absence of exhaustion, making a prima facie showing, plaintiff must refute that showing.

12   Plaintiff may rely upon statements made under the penalty of perjury in the complaint if the

13   complaint shows that plaintiff has personal knowledge of the matters stated and plaintiff calls to

14   the court's attention those parts of the complaint upon which plaintiff relies.  If the court

15   determines that plaintiff has failed to exhaust, dismissal without prejudice is the appropriate

16   remedy for non-exhaustion of administrative remedies. Wyatt v. Terhune, 315 F.3d at 1120.

17                    *PLRA Requirements*

18                   The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) provides that,

19   "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any

20   other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

21   such administrative remedies as are available are exhausted."  Inmates seeking injunctive relief

22   must exhaust administrative remedies. Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999).  In Booth

23   v. Churner, 532 U.S. 731,741, 121 S. Ct. 1819, 1825 (2001), the Supreme Court held that

24   inmates must exhaust administrative remedies, regardless of the relief offered through

25   administrative procedures.  Therefore, inmates seeking money damages must also completely

26   exhaust their administrative remedies. Booth v. Churner, 532 U.S. 731, 121 S. Ct. 1819 (inmates

                                                  5

1   seeking money damages are required to exhaust administrative remedies even where the

2   grievance process does not permit awards of money damages).  The United States Supreme Court

3   has held that exhaustion of administrative remedies under the PLRA requires that the prisoner

4   complete the administrative review process in accordance with the applicable procedural rules.

5   Woodford v. Ngo, 548 U.S. 81, 126 S. Ct. 2378 (2006).  Thus, in the context of the applicable

6   PLRA § 1997e(a) exhaustion requirement, any question as to whether a procedural default may

7   be found should a prisoner plaintiff fail to comply with the procedural rules of a prison's

8   grievance system has been resolved: the PLRA exhaustion requirement can only be satisfied by

9   "proper exhaustion of administrative remedies....," which means that a prisoner cannot satisfy the

10   requirement "by filing an untimely or otherwise procedurally defective administrative grievance

11   or appeal."  Woodford v. Ngo, supra, at 84, 126 S. Ct. at 2382.   Moreover, 42 U.S.C. § 1997e(a)

12   provides that no action shall be brought with respect to prison conditions *until* such

13   administrative remedies as are available are exhausted.  McKinney v. Carey, 311 F.3d 1198 (9th

14   Cir. 2002).

15                    *Administrative Exhaustion Procedure*

16            In order for California prisoners to exhaust administrative remedies, they must

17   proceed through several levels of appeal:  1) informal resolution, 2) formal written appeal on a

18   CDC 602 inmate appeal form, 3) second level appeal to the institution head or designee, and 4)

19   third level appeal to the Director of the California Department of Corrections.  Barry v. Ratelle,

20   985 F. Supp. 1235, 1237 (S.D. Cal. 1997) (citing Cal. Code Regs. tit. xv, § 3084.5).  A final

21   decision from the Director's level of review satisfies the exhaustion requirement.  Id. at 1237-38.

22            However, if the subject of the prisoner's complaint is a "staff complaint," such

23   does not proceed through the ususal grievance procedures.  The remedy for such a complaint is

24   that CDCR initiate an investigation.  An inmate can receive no other relief at that time regarding

25   the staff complaint.  Brown v. Valoff, 422 F.2d 926, 937-938 (9th Cir. 2005) (not cited in

26   defendants' motion).  If relief other than is available for a staff complaint is sought, e.g., be

6

1   housed in protective custody, be single celled etc., then the regular three level appeal process

2   must be exhausted as for that relief.  Id at 938.  Importantly for this motion, if on a staff

3   complaint, a request is granted or partially granted, i.e., an investigation is ordered, *the inmate*

4   *has exhausted all available remedies for the staff complaint.*  Id. at 937-938.[5]  If misconduct on

5   the part of staff is found, only CDCR has the authority to impose punishment, i.e., an inmate

6   does not proceed in an adversarial fashion to determine the punishment.  If the charge of

7   misconduct is not sustained, the matter ends.  Thus, for allegations of staff misconduct, there is

8   nothing a prisoner can do in either event past being awarded an investigation "remedy."

9                           *Argument/Discussion*

10          Defendants contend that plaintiff filed, with respect to the 10/25/05 incident, four

11  inmate administrative grievances accepted by the Inmate Appeals Branch, and one inmate appeal

12  that was submitted three times but screened out and rejected.  MTD, pp. 4-5.  In appeal no. 05-

13  02082, plaintiff alleged improper medical care by defendant Williams related the 10/25/05 cell

14  extraction.  MTD, p. 5, Exhibit (Exh.) A, ¶ 4, Declaration of N. Grannis, Chief of the Inmate

15  Appeals Branch, & Exh. B, grievance 05-02082, re: defendant Williams through third level.

16  However, defendants aver, only in inmate appeal no. 05-02184 (IAB nos. 5019103 & 5032039),

17  did plaintiff detail the alleged injuries of the 10/25/05 cell extraction, contending "he was

18  subjected to excessive force, injury assault and conspiracy by correctional staff."  MTD, p. 5,

19  Exh. C, appeal no. 05-02184, filed on 11/08/05, through the "partially granted" second level

20  response.  Defendants argue that this appeal was first rejected at the director's level on 2/23/06 as

21  "untimely by over two months"  because Cal. Code Regs. tit.xv, § 3084.6(c) requires that an

22  appeal be submitted by an inmate to the next level of review within 15 days of receipt of a

23  ───────────────

24         [5] The reason why a staff complaint grievance might only be partially granted when an
    investigation is ordered, is that prisoners quite often ask for a specific punishment to be awarded
25  as a part of the grievance.  In no case may a prisoner be awarded specific punishment to be meted
    out to staff for staff misconduct – such is a remedy that is never available to the prisoner – only
26  CDCR in its role as the staff disciplinary authority.  In other words, the prisoner has no standing
    to seek a specific punishment.

1   response, dated 12/15/05.  MTD, p. 5, Exh. A, Grannis Dec., ¶¶ 4, 6.  When plaintiff resubmitted

2   appeal no. 08-02184 on 10/18/06, it was again rejected as untimely, and on his third submission

3   of the same appeal, on 12/28/06, the IAB informed plaintiff that the appeal was not accepted at

4   the director's level.  Id.  Thus, this appeal, according to defendants, was never properly exhausted

5   through the third level.  MTD, p. 5.

6              In appeal no. 06-00121 (IAB no. 0509558), signed by plaintiff on 12/12/05,

7   plaintiff alleged that he "was inappropriately found guilty" of attempted battery on a peace

8   officer, a charge arising from the incident of 10/25/05.  MTD, p. Exh. D.  In the appeal, plaintiff

9   complains that the preponderance of the evidence does not substantiate the charge and that he

10  was denied his due process rights related to the hearing procedures.  Exh. D.  In an attachment to

11  the appeal, plaintiff does complain, inter alia, that the videotape of the incident does not show

12  whether he resisted or not because defendants Long and Heintschel blocked the camera view,

13  that there was a cover-up once the officers entered the cell, that at some point he sustained a jaw

14  laceration and that the evidence demonstrated that excessive force was used against him,

15  resulting in his alleged serious injuries.  Id.  Plaintiff concludes that he is, therefore, not guilty of

16  attempted battery on a peace officer, and the RVR should be dismissed.  Id.  Although defendants

17  concede that plaintiff refers to the 10/25/05 incident, they contend that the references therein are

18  "merely for peripheral background information" and plaintiff's principal grievance is the

19  supposed "mishandling and adjudication" of the RVR at the 11/24/05 hearing.  MTD, p. 5, Exh.

20  A, Grannis Dec. ¶ 7.  Defendants state that the IAB review was "appropriately limited" to the due

21  process violation allegations.  Id., & Exh. D.  Defendants further contend that if plaintiff's intent

22  had been to complain of excessive force arising from the incident that it would have been

23  untimely as filed more than seven months after the incident.  MTD, p. 5.  As to this contention,

24  however, the court notes that this grievance appears to have been initiated on 12/12/05 or

25  thereabouts which, while not within the 15-working-days prison administrative appeal filing limit

26  of the 10/25/05 incident, is less than two months, not more than seven months beyond that date.

That grievance does appear to be closer to the apparent RVR hearing date. In any case, defendants' contention that the grievance at that point relating to the excessive force claims would have been untimely in the prison grievance process is not of itself a persuasive argument in this court, what is germane is how the prison appeal was framed and construed.

In appeal no. 06-01209 (IAB no. 0609488), wherein plaintiff complains that custody and medical staff were removing medical records from his Unit Health Records in an attempted cover-up of the 10/25/05 incident, defendants again concede that plaintiff references the incident, but that the references once again are "peripheral background information" and that the IAB review appropriately was limited to the staff misconduct allegations related to the record removal. MTD, p. 6, Exh. A, Grannis Dec., ¶¶ 4, 8 & Exh. E. The court's review of the grievance establishes that its focus is an allegation of staff misconduct arising from purported stealing or destruction of documents that were discovered as missing on 5/8/06, although plaintiff does contend that the "misconduct" is related a cover-up of "police brutality on 10/25/05..." Defendants again aver that this appeal cannot be treated as an excessive force complaint and if that were plaintiff's intent he would have been late by more than seven months. MTD, p. 6. While in this instance, defendants' assessment of the tardiness with respect to any excessive force complaint arising from the 10/25/05 incident appears to be accurate, this part of defendants' argument would be relevant only if the grievance had been so construed and the appeal found untimely on that basis as the court will not make a finding based on speculative claims of whether or not prison appeal time limits might have been exceeded.

Finally, in appeal no. 06-00814 (IAB no. 0611629), plaintiff filed a grievance complaining of not being permitted to review and copy his medical records. MTD, p. 6, Exh. A, Grannis Dec., ¶¶ 4, 9. Defendants acknowledge that plaintiff was seeking medical records from 10/25/05 and 10/26/06 but had not received the records. Exh. A, ¶ 9.

Defendants cite Woodford v. Ngo, supra, 126 S. Ct. at 2385, for the proposition that proper exhaustion requires adherence to the deadlines for proceeding through all levels of

1   review and maintain that only appeal no. 05-02184, which was not submitted for third level

2   review until two months after the second level decision, addressed plaintiff's claims of excessive

3   force, injury, assault and conspiracy raised herein, and thus the claims were not properly

4   exhausted.  MTD, pp. 6-7.

5           In opposition,[6] plaintiff contends that his first level grievance in appeal no. 05-

6   02184, resulted in the promise of an investigation of his claims and thereby satisfied the

7   exhaustion requirement.  Opposition (Opp.), pp. 1-2.  Plaintiff includes the second level reviewer

8   response to that appeal as Exh. A (pp. 17-18).  (Defendants also include the response as part of

9   their Exh. C to MTD.)   The second level review response makes quite clear that that grievance

10  directly addressed the allegations raised herein:

11          You contend that on October 25, 2005, excessive and unnecessary
        force was used on you resulting in serious injury in violation of
12          California Penal Code -245(A)(1) and that officers have conspired
        to "cover-up" the violent assault on you.  You claim that officers
13          shot you in the head with a 37 MM weapon causing you to lose
        consciousness.  When you claim to have awoken fists and feet
14          were striking you in the head, back, neck and left leg.  You claim
        to have heard officers yelling, "Where are the fucking handcuffs".
15          As you were escorted out of 6-block, Correctional Officer (C/O) R.
        Morrow told you to stop resisting, then ran your face into the
16          doorframe that resulted in serious injury (laceration) to your jaw.
        You allege to have been thrown head first into the decontamination
17          shower by C/Os Morrow and C. Dean resulting in neck injuries.
        Furthermore you claim officers manipulated the video camera prior
18          to the violent assault on you.  You assert the assaults are
        premeditated and carried out by veteran officers maliciously to
19          cause serious or fatal injury.  You claim to have received injuries to
        your jaw, left leg, ankle, neck, middle back, head, wrists, forearms
20          and right foot as a direct result of C/Os Morrow, Dean and J.
        Tinseths' premeditated assault on you while they were under the
21          supervision of Correctional Sergeant M. Long, Correctional
        Lieutenant C. Heintschal [sic] and Facility Captain G. Nies.  You
22          request this complaint be forwarded to the Sacramento District
        Attorney Office for possible prosecution, that all staff and inmates
23          be interviewed who were in C-Section at the time of the incident

24  _____

25          [6] Plaintiff maintains within his first amended complaint that in three separate inmate
    appeals, nos. 05-02184, 0502082 and 06-00121, he exhausted his allegations through the third
26  level of review.  AC, p. 20.

1    and that you be given a polygraph examination.

2    Opp., Exh. A, p. 16, MTD, Exh. C, p. 17.

3    The second level review included a decision showing the appeal was partially

4    granted:

5    Your appeal is partially granted in that your allegations of staff
     misconduct have been referred to the Associate Warden of A
6    Facility for a review.  You will be interviewed during this process.
     Pursuant to state law, the results of any staff review shall not be
7    released to the public, inmates, parolees, or other staff.  However,
     you will be notified when the review has concluded and whether
8    your allegations were or were not sustained.

9    Be advised that although you have the right to submit an appeal as
     a staff complaint, the request for administrative action against staff
10   is beyond the scope of the departmental appeals process.  In
     addition, no reprisal is taken against any inmate for filing an
11   appeal.

12   Opp., Exh. A, p. 17, MTD, Exh. C, p. 18.

13   Plaintiff maintains that, after the appeal was bypassed at the first level, it was

14   partially granted at the second level on 12/19/05.  Plaintiff includes in his Exh. A a portion of the

15   appeal and response that defendants do not include in their Exh. C.

16   Conclusion

17   The exhaustion question here is directly controlled by Brown v. Valoff.  Plaintiff

18   was granted an investigation (the only relief available) and was expressly told that the Director,

19   or third level of appeal could do no more for plaintiff in regards to his complaint against staff.

20   As such plaintiff's excessive force claim was exhausted, and there was nothing else plaintiff had

21   to perform.  Defense counsel could have saved much time by recognizing the on point Ninth

22   Circuit authority regarding exhaustion of complaints against staff for misconduct.

23   Accordingly, IT IS ORDERED:

24   1.  The Clerk is to correct the spelling of the names of defendant "Morrow" to

25   "Marrow," defendant "Heintchel" to "Heintschel," and defendant "Neil" to "Neis" in the court's

26   docket;

11

1       2.  Defendant Woodard's 3/06/08 (# 21) request to join the motion to dismiss is

2  granted.

3       IT IS RECOMMENDED that:

4       1.  Defendants' motion to dismiss, filed on 2/14/08 (# 18) be denied;

5       2.  Plaintiff's motion for leave to file a second amended complaint, filed on

6  4/23/08 (# 27) be granted; and

7       3.  This matter also proceed as to plaintiff's claims of deliberate indifference to

8  serious medical needs against defendant Williams from whom an answer must be filed within

9  thirty days of adoption of these findings and recommendations, should that occur.

10       These findings and recommendations are submitted to the United States District

11  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

12  days after being served with these findings and recommendations, any party may file written

13  objections with the court and serve a copy on all parties.  Such a document should be captioned

14  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

15  shall be served and filed within ten days after service of the objections.  The parties are advised

16  that failure to file objections within the specified time may waive the right to appeal the District

17  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

18  DATED: 07/30/08

19                     /s/ Gregory G. Hollows

20                     GREGORY G. HOLLOWS
                        UNITED STATES MAGISTRATE JUDGE

21  GGH:009
    lay0711.mtd+

22

23

24

25

26